IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTERLINE EQUIPMENT CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 CH 1611 |
| | ) | |
| v. | ) | |
| | ) | Judge Pallmeyer |
| BANNER PERSONNEL SERVICE, INC., | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR UNITED STATES' COMBINED BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND IN SUPPORT OF THE CONSTITUTIONALITY OF THE
TELEPHONE CONSUMER PROTECTION ACT**

PETER D. KEISLER
Assistant Attorney General

PATRICK J. FITZGERALD
United States Attorney

THOMAS P. WALSH
Assistant United States Attorney

THEODORE C. HIRT
Assistant Branch Director

JONATHAN ELI ZIMMERMAN
(MA Bar No. 654255)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7116
Washington, D.C. 20530
(202) 353-0441 / (202) 381-7610
*Attorneys for the United States of America*

**INTRODUCTION**

Despite overwhelming contrary precedent, and completely ignoring a recent decision of this Court rejecting identical claims, see Phillips Randolph Enterprises, LLC v. Rice Fields, 2007 WL 129052, slip op., (N.D. Ill. January 11, 2007) (J. Kocoras) (hereinafter "Phillips Randolph"), defendant Banner Personnel Service has challenged the constitutionality of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"), in its motion to dismiss. The constitutional arguments defendant has raised have been routinely rejected by numerous courts, including this Court, and should be similarly denied in this case.

Section 227(b) of the TCPA prohibits anyone from using any telephone facsimile machine ("fax"), computer, or other device to send an unsolicited advertisement to a fax machine unless the sender secured advance consent from the fax machine owner before sending the advertisement, or otherwise meets an exception to the prohibition. Section 227(c) imposes statutory damages of $500 for each violation.

Plaintiff filed this action alleging that defendant violated the TCPA by faxing plaintiff, and at least 40 unnamed others, unsolicited advertisements. Compl. ¶¶ 2-15. Defendant filed a motion to dismiss plaintiff's Complaint arguing, among other grounds, that the TCPA violates the First Amendment, the due process protections of the Fifth Amendment, and the Eighth Amendment's prohibition on excessive fines. See Defendant's Motion to Dismiss at 2-8 (hereinafter "Def's Mot."). On July 31, 2007, the Court ordered that: "[s]hould the United States choose to intervene" it could file an opposition to defendant's motion. Minute Order (July 31, 2007). As the parties do not oppose the United States' intervention in this matter for the purpose of defending the constitutionality of the TCPA, the United States, on behalf of itself and the

Federal Communications Commission ("FCC"), hereby intervenes in this action to defend the constitutionality of the TCPA.[1]

Defendant's constitutional arguments are incorrect and have been rejected by this Court. In Phillips Randolph, 2007 WL 129052, this Court denied a motion to dismiss based on arguments identical to defendant's First, Fifth, and Eighth Amendment claims. Id. Furthermore, as far as the United States is aware, all other courts to consider whether the TCPA is constitutional have upheld its constitutionality, or if they ruled contrary to its constitutionality, have later been reversed.[2] This includes a number of Illinois State Courts, all of which have upheld the constitutionality of the TCPA from similar challenges.[3]

---

[1] The government will only address defendant's constitutional challenges to the TCPA. With respect to defendant's argument that states must take "affirmative action to 'permit' [TCPA]. . .claims (e.g. by enacting enabling statutes)", Def's Mot. at 8, the government notes only that this case has been brought in federal court pursuant to federal statutory law. Defendant's suggestion that the state of Illinois must take some action to provide for jurisdiction in its courts would apply only to cases brought in state courts, and even then would be incorrect. See Testa v. Katt, 330 U.S. 386, 393-94 (1947); First Capital Mortgage Corp. v. Union Federal Bank of Indianapolis, 2007 WL 1880656 (Ill. App. Ct. 1st Dist. June 29, 2007); Whiting Corp. v. MSI Marketing Inc., 02 CH 6332 (Cook County Circuit Court, Apr. 3, 2003).

[2] All federal courts but one have found the TCPA constitutional. The one district court that did not, Missouri ex rel. Nixon v. American Blast Fax, Inc., 196 F. Supp. 2d 920, 934 (E.D. Mo. 2002), was reversed on appeal. See Missouri v. American Blast Fax, Inc., 323 F.3d 649, 660 (8th Cir. 2003), cert. denied, 540 U.S. 1104 (Jan 12, 2004). All state courts but three, that the United States is aware of, have found the TCPA constitutional. The three that did not were reversed on appeal. On April 14, 2004, the Supreme Court of the State of New York, Appellate Term: 2nd and 11th Judicial Districts in Rudgayzer & Gratt v. Enine, Inc., 779 N.Y.S.2d 882 (N.Y. Supp. App. 2004), upheld the constitutionality of the TCPA and reversed the decisions of two trial courts. On May 6, 2004, the Court of Appeals of Texas, Houston (14th District) in The Chair King, Inc., v. GTE Mobilnet of Houston, Inc., 2004 WL 964224 (Tex. App. May 6, 2004), *rev'd* on non-constitutional grounds in 184 S.W.3d 707 (Tex. 2006), upheld the constitutionality of the TCPA and reversed in part and affirmed in part the decision of the trial court.

[3] See e.g. Stonecrafters, Inc. v. Handleman Insurance Agency, Inc., No. 03 CH 434 (McHenry County Circuit Court, June 22, 2004) (Appx. Tab A); Brill v. Becktold, No. 06 CH

## ARGUMENT

I.  **The TCPA Does Not Violate the First Amendment.**

Addressing what it correctly understood to be the "explosive growth" of advertising via facsimile, Congress enacted the TCPA to prevent advertisers from: (1) shifting the costs of advertisements to fax machine owners, and (2) causing disruptions to fax machine owners. Report to Accompany H.R. 1304, H.R. Rep. No. 102-317, at 10, 25 (1991).  The TCPA thus does not violate the First Amendment because it does not target any particular message or viewpoint, the central concern of the Supreme Court's commercial speech jurisprudence, and instead simply prevents advertisers from taking the property of others without their consent.  It also allows commercial advertisers to send faxes to those who agree to receive them.  In many ways the TCPA can be understood as an anti-conversion statute, but the parties agree that viewed through the framework of First Amendment doctrine evaluating restrictions on commercial speech, the appropriate test is set forth in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557 (1980) ("Central Hudson").  See also Phillips Randolph, 2007 WL 129052, slip op. at *3 (applying Central Hudson).

  A.  **The TCPA Satisfies the Central Hudson Test**

The TCPA satisfies the elements of the Supreme Court's test for evaluating commercial speech restrictions as set forth in Central Hudson, 447 U.S. at 557.  Defendant's arguments that

---

1520 (Cook County Circuit Court, October 28, 2006) (Appx. Tab B); Whiting Corp. v. MSI Marketing Inc., 02 CH 6332 (Cook County Circuit Court, Apr. 3, 2003) (Appx. Tab C); Eclipse Manufacturing Co. v. T.J. Copy Products, 03 CH 1344 (Lake County Circuit Court, April 23, 2004) (Appx. Tab D); Metro Kirby Co. v. Hines, 02 L 218 (Madison County Circuit Court, December 16, 2003) (Appx. Tab E); Robin Hill Development Co. v. JD&T Enterprises, Inc., No. 01 L 527 (DuPage County Circuit Court, October 3, 2002) (Appx. Tab F).  All of these Illinois State Court decisions are included in the Appendix filed along with this memorandum.

the TCPA does not advance any substantial government interest and is not narrowly tailored, see Def's Mot. at 2-6, are incorrect and have been rejected by this Court, as well as a number of Illinois State Courts. See Phillips Randolph, 2007 WL 129052 at *2-4; supra note 3.

In Central Hudson, 447 U.S. 557, the Supreme Court recognized the "distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech," id. at 562 (internal quotations omitted), holding that "[t]he Constitution therefore accords a lesser protection to commercial speech than to other constitutionally protected speech." Id. Under Central Hudson, commercial speech regulations are valid as long as they implement a substantial governmental interest, directly advance that interest, and are narrowly tailored to serve that interest. Id. at 566. This standard does not require the legislature to employ "the least restrictive means" necessary to accomplish its interest or to achieve a perfect fit between means and ends. Board of Trs. of the State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989). The legislature need only achieve a "reasonable" fit by adopting regulations "in proportion to the interest." Id. (quotation marks omitted).

      **1.    The United States Has a Substantial Interest in Eliminating the Cost-Shifting and Interruptions Caused by Unsolicited Commercial Faxes**

In enacting the TCPA, Congress properly recognized that the United States has a substantial interest in eliminating the ability of fax marketers to shift their advertising costs to fax recipients without their consent and in eliminating interruptions caused by unwanted faxes. Both are substantial interests under the Supreme Court's commercial-speech jurisprudence.

In arguing that the government does not have a substantial interest in eliminating the cost-shifting and interruptions caused by unsolicited faxes, defendant ignores the recent decision of

this Court, as well as numerous decisions of both state and federal courts, finding that the government has a substantial interest in preventing cost-shifting and interference.[4] A review of the legislative history surrounding the TCPA further illustrates the United States' substantial interest in regulating unsolicited commercial faxes.

> a) *Fax Advertising Shifts Costs and Disrupts Businesses*

Congress recognized that unsolicited facsimile advertising shifts the costs of advertising from the sender to the recipient. H.R. Rep. No. 102-317, at 10 (1991), 1991 WL 245201. Fax advertising differs from other advertising because when an advertiser sends a fax solicitation, the recipient bears both the cost of using the fax machine, and the cost of the fax paper, whereas when an advertiser sends junk mail, "the recipient pays nothing." H.R. Rep. No. 102-317, at 25.

In addition to preventing unfair cost-shifting, Congress recognized a substantial governmental interest in preventing the business disruptions that result from unsolicited fax advertising. Congress correctly recognized that a fax machine requires several minutes to receive and print a fax, during which time it is unable to process business communications, and that most fax machines cannot process more than one message at a time. H.R. Rep. No. 102-317, at 25.

Defendant's argument that the minimal cost of a fax cannot justify the TCPA prohibition is irrelevant and incorrect. Def's Mot. at 6. The assertion is irrelevant because appropriating the

---

[4] See, e.g., Phillips Randolph, 2007 WL 129052; Stonecrafters, No. 03 CH 434 (McHenry County Circuit Court, June 22, 2004); Whiting Corp. v. MSI Marketing Inc., 02 CH 6332, at 18 (Cook County Circuit Court, Apr. 3, 2003); Destination Ventures, Ltd. v. FCC, 844 F. Supp. 632, 637 (D. Or. 1994) (holding government interest substantial), aff'd, 46 F.3d 54, 55 (9th Cir. 1995) (defendant did not contest government interest); see also, e.g., Robin Hill Development Co. v. JD&T Enterprises, Inc., No. 01 L 527 (DuPage County Circuit Court, October 3, 2002) (holding government interest in preventing cost-shifting substantial); Eclipse Manufacturing Co. v. T.J. Copy Products, 03 CH 1344 (Lake County Circuit Court, April 23, 2004).

property of another without consent is inconsistent with the fundamental view of property as significant regardless of how much of it is at stake.  See Phillips v. Washington Legal Found., 524 U.S. 156, 170 (1998) ("our longstanding recognition is that property is more than economic value . . . ; it also consists of the group of rights which the owner exercises in his dominion of the physical thing, such as the right to possess, use, and dispose of it").  Congress appropriately recognized that although businesses have the right to advertise, they do not have the right to appropriate someone else's property (in whatever amount) to do so.

Defendant also is incorrect because there is nothing de minimis about the costs that unwanted faxes impose upon individuals and businesses without their consent.  In 1991, Congress determined that 30 billion pages were being faxed per year;[5] that this phenomenon had been "accompanied by explosive growth in unsolicited facsimile advertising, or 'junk fax,'" H.R. Rep. No. 102-317, at 10; that a single fax advertiser "could easily deliver tens of thousands of unsolicited messages per week to other facsimile machines across the country;" and that a single junk faxer in California already was routinely sending out 60,000 faxes per week and had assembled a database of 500,000 fax numbers as early as 1989.  Hearing on H.R. 621, 2131 and 2184 Before the Subcomm. on Telecomm. and Fin. of the House Comm. on Energy and Commerce, 101st Cong., 1st Sess. at 56 (statement of Professor Robert L. Ellis).  Using the price of fax paper that applied in 1989 (between 8 and 12 cents per sheet) and ignoring toner and other associated costs, that single junk faxer in California cost recipients between $250,000 and

---

[5] Hearing on H.R. 628, 2131 and 2184 Before the Subcomm. on Telecomm. and Fin. of the House Comm. on Energy and Commerce, 101st Cong., 46 (May 24, 1989) (statement of Professor Ellis).

$375,000 per year. Furthermore, even if the costs to a recipient were de minimis with respect to one faxer, that recipient could be receiving unsolicited faxes from a number of other junk faxers.

    *b)*   *The Problems Congress Perceived Were Real*

The legislative record plainly suffices to support the TCPA's unsolicited commercial fax restriction. The Supreme Court has held that the United States may justify restrictions on commercial speech "based solely on history, consensus, and 'simple common sense.'" Florida Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995). Further, Congress knew that this was only the beginning. It heard testimony about a modem that could hunt for and store fax numbers for future use. Hearing on H.R. 621, 2131 and 2184 Before the Subcomm. on Telecomm. and Fin. of the House Comm. on Energy and Commerce, 101st Cong., 1st Sess. 54-55 & n.35 (1989) (statement of Professor Robert L. Ellis). Defendant presents no reason for doubting this evidence or the reasonableness of Congress' conclusions, other than to suggest that changes in technology allow some faxes to be received on a computer, thus obviating the need to print them. See Def's Mot. at 6. While this may be the case, the large number of standard fax machines, and improvements in technology that allow parties to send unsolicited fax messages faster and to greater numbers of recipients, see Hearing on H.R. 621, 2131 and 2184 Before the Subcomm. on Telecomm. and Fin. of the House Comm. on Energy and Commerce, 101st Cong., 1st Sess. 54-55 & n.35 (1989) (statement of Professor Robert L. Ellis), only heightens the government's interest in preventing unsolicited commercial fax communications.

In these ways, there is strong evidence that the United States' interest in preventing the shifting of advertising costs and the interruption of fax lines is substantial. These interests are similar to the range of interests that previously have satisfied this aspect of the Central Hudson

inquiry.[6] Thus, Congress' interests in passing the TCPA – preventing cost-shifting and interference – are "substantial and real." Texas v. American Blastfax, 121 F. Supp. 2d. 1085, 1092 (W.D. Tex. 2000).

### 2. The TCPA Directly Advances the United States' Interests

In Phillips Randolph, this Court held that the TCPA advances a substantial government interest, finding that there "can be no question that the TCPA's prohibitions on unsolicited faxes materially alleviates the harms Congress identified as associated with their receipt." Id., 2007 WL 129052 at *3-4. With the TCPA, Congress regulated the kind of faxes – unsolicited advertisements – whose prohibition (absent consent) alleviates the greatest part of the burden imposed on fax recipients.

While defendant argues that because the TCPA does not stop all unsolicited fax traffic it does not advance the government's interests, see Def's Mot. at 3, the fact that the TCPA would not completely stop unsolicited fax traffic does not mean that it does not serve the government's interests. Commercial advertising faxes constitute the bulk of unsolicited faxes. See Rudgayzer, 779 N.Y.S. 2d at 889. Preventing this large category of unsolicited fax communications from being sent surely furthers the government's interests in preventing the shifting of advertising costs and the interruption of fax lines. As this Court noted, in rejecting an identical argument in Phillips Randolph, "[f]ewer faxes mean potential recipients incur fewer costs and waste less time." Id., 2007 WL 129052 at *3.

---

[6] See, e.g., United States v. Edge Broad. Co., 509 U.S. 418, 426 (1993) (holding Congress has substantial interest in regulating lottery advertisements to balance the policies of some states to prohibit lotteries and other states to allow them).

Defendant's reliance on City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410 (1993), is misplaced. In Discovery Network, the Supreme Court explained that it was "proper for the [lower courts] to judge the validity of the city's prohibition under the standards set forth in Central Hudson and Fox" and analyzed the First Amendment challenge under the framework employed by those cases.[7] 507 U.S. at 416. The ordinance at issue in Discovery Network – which prohibited the distribution of commercial publications through freestanding newsracks on public property – failed to pass scrutiny under the reasonable fit test because the challenged statute would bring about the removal of only 62 newsracks from city streets, while leaving between 1,500 to 2,000 in place. See id. at 417. Based on that observation, the Court found that the commercial/non-commercial "distinction b[ore] no relationship whatsoever to the particular interests [in safety and esthetics] the city h[ad] asserted." Id. at 418, 424 (emphasis in original). In contrast, in this case, the regulation of unsolicited fax advertisements bears a direct and strong relationship to the expenses and burdens incurred by fax recipients. See Rudgayzer, 779 N.Y.S. 2d 882, 889 ("the fact that advertising faxes constitute the bulk of unsolicited faxes also distinguishes the present case from City of Cincinnati v. Discovery Network, Inc. . . .").

In these ways, both Congress, and numerous courts, including this Court, have found that the TCPA directly advances the United States' interests in preventing the shifting of advertising costs and unwanted interruptions.

---

[7] To the extent footnote 11 of the Discovery Network opinion suggests that a higher level of scrutiny may be appropriate in certain cases, it is referring to cases like 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484 (1996), in which the state was targeting a particular message. As explained in the text, this case is not one of those because the TCPA is aimed at the adverse effects stemming from the unsolicited fax advertisements – i.e., the costs to the recipients and the disruption of clogging up the recipient's own fax machine. See Discovery Network, 507 U.S. at 416 n.11.

### 3. There is a Reasonable Fit Between the TCPA's Limitation on Unsolicited Facsimile Advertisements and Congress' Goals

The last prong of the Central Hudson test requires that there be a "reasonable fit" between "the legislature's ends and the means chosen to accomplish those ends." 447 U.S. at 566. This test does not require that "there be no conceivable alternative" to the restriction selected by the United States, "but only that the regulation not 'burden substantially more speech than necessary to further the government's legitimate interests.'" Fox, 492 U.S. at 478. This Court held that the TCPA satisfies the reasonable fit test in Phillips Randolph, 2007 WL 129053 at *4.[8]

In suggesting that because there exist two conceivable alternatives to the TCPA's restriction on unsolicited commercial faxes the statute is unconstitutional, defendant fails to address this Court's rejection of an identical claim in Phillips Randolph, 2007 WL 129053 at *4, and misses one of the central ideas behind the Central Hudson standard of review. 447 U.S. at 566. Congress does not need to choose the least restrictive means for curbing the cost-shifting and interference caused by unsolicited faxes. Fox, 492 U.S. at 480. Rather Congress need only implement regulations which are in proportion to these interests. Id. (quoting In re R.M.J., 455 U.S. 191, 203 (1982)). See also Phillips Randolph, 2007 WL 129052, at *4 ("the Supreme Court has made clear that Central Hudson does not require a legislature to choose the least restrictive means available in order to satisfy the last factor of the test it sets forth") (citing Lorillard Tobacco Co. v. Reilly, 533 U.S. 525 (2001)); Whiting, No. 02 CH 6332 at 7-8. Under this

---

[8] See also Brill v. Becktold, No. 06 CH 1520 (Cook County Circuit Court, October 28, 2006); Whiting v. MSI Marketing, 02 CH 6332 (Cook County Circuit Court, Apr. 3, 2003); Eclipse Manufacturing Co. v. T.J. Copy Products, 03 CH 1344 (Lake County Circuit Court, April 23, 2004); Metro Kirby Co. v. Hines, 02 L 218 (Madison County Circuit Court, December 16, 2003); Robin Hill Development Co. v. JD&T Enterprises, Inc., No. 01 L 527 (DuPage County Circuit Court, October 3, 2002)

standard, courts do not second-guess Congress by comparing the regulations implemented by Congress with other possible regulations, but rather examine the existing regulations on their own merits and determine whether the existing regulations achieve a reasonable fit. As the court stated in Whiting, 02 CH 6332 (Cook County Circuit Court, Apr. 3, 2003): "[i]t is not this Court's role to substitute its judgment for that of the Congress." Id. at 8.

The Supreme Court has been "loath to second-guess the Government's judgment to that effect." Fox, 492 U.S. at 478. The Fox Court noted that, for example, in Metromedia, Inc. v. City of San Diego, 453 U.S 490, 513 (1981), it had upheld a ban on off-site billboard advertising because of the City of San Diego's interest in preserving traffic safety, and it did not inquire whether other methods such as controlling the size and appearance of such signs would have sufficed. See Fox, 492 U.S. at 479. The Supreme Court also does not consider an alternative to be adequate unless it serves the particular government's substantial interest "as well" as the government's chosen restriction. Central Hudson, 447 U.S. at 564.

The fit between the TCPA and the United States' interests is obvious and was confirmed by this Court in Phillips Randolph in rejecting an argument identical to that advanced by the instant defendants. See id. at *4 ("The methods employed by the TCPA reasonably fit the goal of reducing the costs and wasted time produced in the receipt of unsolicited fax advertisements. . . ."). Defendant, nonetheless, suggests that Congress could have instead adopted a regulation that allowed individuals to opt out of receiving faxes by notifying senders that they do not want to receive any more faxes. Def's Mot. at 5. Or, defendant claims, Congress could have established a do-not-fax list. See id. Neither of these alternatives would serve the substantial interests that Congress sought to advance as effectively as the TCPA because, as this Court held in Phillips

Randolph, "the 'alternatives' [defendant] proposes are not equivalent to those embodied in the TCPA in that they would place the burden of avoiding unwanted faxes onto the recipient, thus undermining the remedy the statute embodies." Id. at *4. See also Missouri v. American Blast Fax, Inc., 323 F.3d 649, 660 (8th Cir. 2003) ("the TCPA restriction on unsolicited commercial fax advertisements achieves a reasonable fit between the means it adopts and the ends it seeks to serve. It thus satisfies the fourth element of the Central Hudson test").

In any event, the fact that there are some "possible alternatives do[es] not show that the TCPA's ban on unsolicited fax advertisements is an unreasonable 'fit' for the interests directly advanced by the ban." Texas v. American Blastfax, 121 F. Supp 2d. at 1092; see also Kenro, 962 F. Supp. at 1168-69 (the mere existence of "some imaginable alternative" does not establish that the TCPA is improperly tailored to achieve Congress's purposes). In addition to being necessary to accomplish the United States' interests, the TCPA's restrictions on fax advertising have, at best, only a limited impact on the speech of advertisers. Unlike the paradigmatic commercial speech case, the TCPA does not prohibit advertisers from conveying the communicative impact of any message. It leaves open ample alternative modes of communication, including live solicitation calls, newspaper advertising, and leafleting. The fact that fax advertising may in certain circumstances be a less expensive mode of advertising has little, if any, constitutional significance. See Kovacs v. Cooper, 336 U.S. 77, 88-89 (1949) (noting that the fact that "more people may be more easily and cheaply reached" by a particular mode of communication "is not enough to call forth constitutional protection").[9] The United States asks that this Court follow

---

[9] See also Moser v. FCC, 46 F.3d 970, 974 (9th Cir. 1995) (upholding ban on telemarketing calls using prerecorded messages and noting that the "restrictions in the Act leave open many alternative channels of communications, including the use of taped messages

the ruling of Phillips Randolph and hold that the TCPA "passes constitutional muster under

Central Hudson." Id., 2007 WL 129052 at *4.

## II. The TCPA Does Not Violate Due Process Guarantees

Defendant claims that the TCPA's statutory penalty of $500 per violation, see 47 U.S.C. § 227(b)(3), violates the due process guarantees of the Fifth Amendment. See Def's Mot. at 6-7. This claim has no merit, and has been denied by this Court. See Phillips Randolph, 2007 WL 129052 at *2-3. The standard to be applied for evaluating statutory penalties under the Due Process Clause, is found in St. Louis, Iron Mountain and Southern Railway Co. v. Williams, 251 U.S. 63 (1919). The Williams test, which defendant fails to cite, is whether the penalty is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." Williams, 251 U.S. at 67. Under this test, the "validity" of a penalty "is not to be tested," as defendant argues, by simply contrasting the penalty with actual damages caused. See Williams, 251 U.S. at 67 (noting that when "the penalty is contrasted with the overcharge possible in any instance it of course seems large, but, as we have said, its validity is not to be tested in that way"). Rather, the penalty must be "considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to" the law. Id. As this Court has held, the TCPA readily satisfies these requirements. See Phillips Randolph, 2007 WL 129052, slip op. at *2.

While defendant's apparent contention that the $500 penalty is facially unconstitutional is meritless, its claim that the penalty could be unconstitutionally excessive as applied in certain

---

introduced by live speakers or taped messages to which consumers have consented, as well as all live solicitation calls.") (quoting Kovacs, 336 U.S. at 88-89).

circumstances – e.g., when aggregated in the context of a class action – is unripe where, as here, damages have not been assessed.[10] This argument was also rejected by this Court in Phillips Randolph. Id., 2007 WL 129052 at *3 ("the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations").[11]

### III. The TCPA Does Not Violate the Eighth Amendment.

Defendant also argues that the TCPA's $500 per fax penalty is an unconstitutionally excessive fine under the Eighth Amendment. See Def's Mot. at 7-8. However, this penalty is neither a fine, nor, as discussed above, is it excessive. The Supreme Court has explained that for Eighth Amendment purposes, the word "fine" means "a payment to a sovereign as punishment

---

[10] Cf., e.g., Cheffer v. Reno, 55 F.3d 1517, 1523 (11th Cir. 1995) ("challenges under the Excessive Fines Clause" are "generally not ripe until the actual, or impending, imposition of the challenged fine"); United States v. Mackby, 261 F.3d 821, 830 (9th Cir. 2001) (remanding to the district court for a "'fact-intensive inquiry' to determine the issue of excessiveness") (quoting Wright v. Riveland, 219 F.3d 905, 918-19 (9th Cir. 2000)).

[11] Defendant's reliance on Parker v. Time Warner Entertainment Co., 331 F.3d 13 (2nd Cir. 2003), to support this claim is misplaced. First, the language defendant cites to in support of the proposition that when aggregated across a class the fines provided for under the Communications Policy Act of 1984 may violate due process protections appears not in the majority opinion but in a separate concurrence not joined by any other member of the panel. See id. at 23. Second, the due process issue in Parker focused exclusively on an issue of class certification, and was raised by Judge Newman in his concurrence only in an academic way: "*potential* due process concerns and avoiding a result not intended by Congress can appropriately be considered by a district judge in determining that a class will be certified only up to a certain amount," id. at 28 (emphasis added), and noting that aggregation of statutory damages "may" violate due process. Id. at 26. Parker is not persuasive authority in this Circuit, and even if it were, theoretical speculation found in a concurring opinion would still lack precedential value. Furthermore, the speculative nature of the Parker concurrence highlights the fact that the potential due process issues raised by aggregation of statutory damages across a class is not yet ripe in the instant case in which class certification is not yet an issue.

for some offense." United States v. Bajakajian, 524 U.S. 321, 327-28 (1998) (emphasis added) (citation and quotation marks omitted). Because the "penalty" for TCPA violations goes to individual or state plaintiffs rather than the U.S. Treasury, it is not a fine covered by the Eighth Amendment.

## CONCLUSION

For the reasons set forth above, the Court should deny defendant's motion to dismiss to the extent it argues that the TCPA is unconstitutional, and find the TCPA to be constitutional.

Dated: August 31, 2007                            Respectfully submitted,

                                                  PETER D. KEISLER
                                                  Assistant Attorney General
                                                  PATRICK J. FITZGERALD
                                                  United States Attorney
                                                  THOMAS P. WALSH
                                                  Assistant United States Attorney
                                                  THEODORE C. HIRT
                                                  Assistant Branch Director

                                                  _____/s/_____
                                                  JONATHAN ELI ZIMMERMAN
                                                  (MA Bar No. 654255)
                                                  Trial Attorney - United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Massachusetts Ave., N.W. Room 7116
                                                  Washington, D.C. 20530
                                                  (202) 353-0441 / (202) 381-7610
                                                  *Attorneys for the United States of America*

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the following document:

INTERVENOR UNITED STATES' COMBINED BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT

was served on August 31, 2007, in accordance with FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

_____/s/_____
JONATHAN ELI ZIMMERMAN
(MA Bar No. 654255)
Trial Attorney - United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7116
Washington, D.C. 20530
(202) 353-0441 / (202) 381-7610