UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTERLINE EQUIPMENT CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 1611 |
| ) | |
| BANNER PERSONNEL SERVICE, INC., ) | Judge Rebecca R. Pallmeyer |
| and JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On October 18, 2006, Myron Curry, an employee at Defendant Banner Personnel Service, Inc. ("Banner") sent Plaintiff Centerline Equipment Corporation ("Centerline") a one-page fax promoting Banner's services. Plaintiff claims that this fax was unsolicited and therefore a violation of the Telephone Consumer Protection Act ("TCPA"), as well as an unfair practice under the Illinois Consumer Fraud Act ("ICFA"). Defendant denies both that the fax was unsolicited and that sending it was an unfair practice. Plaintiff has moved for summary judgment on both counts, and Defendant has moved for summary judgment on the ICFA count. For the reasons stated below, the court grants summary judgment in favor of Plaintiff on the TCPA claim and in favor of Defendant on the ICFA claim.

**BACKGROUND**

Defendant Banner is in the business of providing temporary staff to business clients. Several years before the transmission of the fax, Banner employees had placed a number of calls to Centerline. According to Banner's logs, between April 30, 2001 and November 15, 2002, Banner made five phone calls to Centerline, presumably to try to sell its services to Centerline. (Ex. E to Pl.'s 56.1.) These calls did not yield any business; it is undisputed that Centerline has never contracted with Banner for permanent or temporary staffing, or for any other service. (Pl.'s 56.1 ¶

14.) After the November 15, 2002 call, the next recorded contact Banner made with Centerline was the October 18, 2006 fax at issue in this case. (Ex. E to Pl.'s 56.1.) The one-page fax reads:

> Cover your holiday and vacation days now!
> These are important days for you and your company
> Call someone you have depended on for 36 years!
> Call Banner Personnel Service
> Since 1970
> Call Myron Curry and get it done!

(Ex. A to Compl.) Curry also sent the fax to other persons and entities contained in the Banner database. (Pl.'s Add'l Facts ¶ 2.) Curry did not send the fax to every person or entity contained in the database, and he claims that he "arbitrarily" chose who would receive the fax. (Curry Dep. 15:19-23, Ex. A to Pl.'s Add'l Facts.) Aside from noting that Banner does not maintain any records of parties that provided express consent to receive advertisements via fax, neither party has produced any evidence about who these other recipients were or whether Banner claims to have established a business relationship with any of them. (Pl.'s 56.1 ¶ 21.)

A note in Banner's logs suggests that Curry may also have called Centerline the day the fax was sent and spoken to someone there. Specifically, Banner's records for John Burnett, the owner of Centerline, reads as follows:

> 10/18/06 MC I faxed holiday/vacation flyer
> MC I talked to him; he still does not use

(Ex. E to Pl.'s 56.1.) This brief entry is the only evidence that Curry talked to Burnett at some point on October 18, 2006. Curry himself had no recollection of calling Burnett that day. (Curry Dep. 14:4-11, Ex. A to Pl.'s Add'l Facts.)

Plaintiff brought suit against Banner for statutory damages under the TCPA for transmitting an unsolicited fax. Plaintiff also sought actual damages—amounting to less than one dollar in costs for toner and paper—and attorney's fees under the ICFA, alleging that Banner's practice of sending

an unsolicited fax amounted to an unfair trade practice.[1] The case was initially brought as a class action, but Plaintiff subsequently dropped the class allegations and proceeds here as the sole plaintiff. On March 3, 2008, the court denied Banner's motion to dismiss, holding, among other things, that the TCPA does not violate the First Amendment and that Plaintiff had adequately pleaded a claim under the ICFA. *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768 (N.D. Ill. 2008). Plaintiff now moves for summary judgment on both the TCPA and ICFA claims. Defendant opposes the motion and seeks summary judgment in its favor on the ICFA claim.

## DISCUSSION

Summary judgment should be granted in favor of a party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Where both sides have moved for summary judgment, the court "construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) (quoting *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006)).

**I.    TCPA**

The TCPA prohibits, among other things, persons from "us[ing] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The statute also permits individuals who receive a fax in violation of this provision to bring a private action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3). Both parties agree that the actual damages caused by the fax in this case amounted

---

[1] The Complaint also contains a count for common law conversion, but that claim is not the subject of either motion presently under consideration.

to less than one dollar, and Plaintiff therefore seeks $500 in statutory damages. (Def.'s Resp. to Pl.'s 56.1 ¶ 18.) The statute also authorizes the award of treble damages for willful or knowing violations of the TCPA, *id.*, but Plaintiff concedes that the alleged violation does not qualify for treble damages.

The TCPA carves out an exception to the general prohibition on the transmission of unsolicited faxes for situations where "the unsolicited advertisement is from a sender with an established business relationship with the recipient." 47 U.S.C. § 227(b)(1)(C)(i). Defendant argues that Plaintiff is not entitled to summary judgment on the TCPA claim because a genuine issue of material fact exists as to whether Banner and Centerline possessed an established business relationship. An "established business relationship" is defined in the implementing regulation as

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5); *see also* 47 U.S.C. § 227(a)(2). Defendant maintained a "client log" for Centerline, documenting the calls made by Banner to Centerline. The six calls recorded between 2001 and 2006 (five of which were in 2001 and 2002) were labeled as either "Marketing Call[s]" or "Cold Call[s]," terms that a Banner employee testified are synonymous and refer to a call to someone "that you may never have spoken with before." (Ex. E to Pl.s' 56.1; Curry Dep. 13:4-11, Ex. A to Pl.s' Statement of Add'l Facts.) The sixth recorded telephone contact, an entry for October 18, 2006, was the fax that Myron Curry at Banner sent to Centerline. (Pl.'s Add'l Facts ¶ 3.) As noted above, Curry may also have spoken to Burnett at Centerline at some point on that date. (Ex. E to Pl.'s 56.1.)

Banner and Centerline did not have an established business relationship as defined by the

regulation. The regulation identifies the two parties to an established business relationship as "a person or entity" and as a "business or residential subscriber." 47 C.F.R. § 64.1200(f)(5). Consistent with the ordinary meaning of the word "subscriber," the use of the term in the statute shows that a "business or residential subscriber" is the recipient of the fax in question rather than the sender. For instance, one subsection of the statute refers to the "Protection of subscriber privacy rights," and describes protection for the privacy rights of those receiving unwanted telephone solicitations. 47 U.S.C. § 227(c). As noted, the statute makes an exception to the junk fax prohibition where parties have an established business relationship, and defines it as "includ[ing] a relationship between a person or entity and a business subscriber [as well as] a relationship between a person or entity and a residential subscriber." *Id.* § 227(a)(2)(A). This expression of concern for both business and residential subscribers demonstrates that "a person or entity" must be understood as the sender of the fax and the business or residential "subscriber" as the recipient.

This distinction is important because, for the exception to apply, the two-way communication between the parties must be made "*on the basis of* an inquiry, application, purchase or transaction *by the business or residential subscriber* regarding products or services offered by such person or entity." 47 C.F.R. 64.1200(f)(5) (emphasis added). In other words, the communication between the two parties must be the result of a request on the part of the recipient of the fax for information about the sender's products. The undisputed evidence shows that the communications here ran in the opposite direction: all of the phone calls made prior to the sending of the fax were initiated by Banner and were "cold calls" soliciting Centerline's business. Furthermore, Banner offers no evidence that Centerline ever made any "inquiry, application, purchase or transaction" with Banner. *Id.* Common sense also supports this result. Were Banner's understanding of the definition of "established business relationship" correct, an entity could establish such a relationship—and hence send otherwise prohibited faxes—merely by calling the company and offering the services

5

on the telephone first. This would defeat the purpose of the Junk Fax Prevention Act (which amended 47 U.S.C. § 227(b)(1)(C) to its present form) which, as its name suggests, was intended to prevent the receipt of unwanted and unsolicited commercial faxes.

The two cases cited by Defendant do not convince the court otherwise. First, in *Carnett's, Inc. v. Hammond*, the Georgia Supreme Court affirmed a denial of class certification under the TCPA because many of the class members, recipients of unwanted faxes, likely had established business relationships with the sender. 279 Ga. 125, 128-29, 610 S.E.2d 529, 532 (Ga. 2005). In reaching this conclusion, the court stated that the "FCC has opined that the established business relationship exemption is broad" and quoted an FCC report that explained that "[y]ou have an established business relationship with a person or entity if you have made an inquiry, application, purchase, or transaction regarding products or services offered by such person or entity."[2] *Id.* at 128, 610 S.E.2d at 531-32 (quoting FCC, Common Carrier Scorecard, Consumer Information About Telephone-Related Issues, November 1998, www.fcc.gov/Bureaus/Common-Carrier/Reports /scard98.pdf, at 22). Decisions of the Supreme Court of Georgia, or any other state, are not controlling here, but even if *Carnett's* has some persuasive value, the facts are distinguishable. The Georgia court concluded that at least some residents in the area where a car wash does business who received faxes from the car wash are likely to have an established business relationship with that company. *Carnett's*, 279 Ga. at 129, 610 S.E.2d at 532. This holding has no bearing on the situation presented by the present case, where the single plaintiff insists it had no prior business relationship with the defendant, and the defendant offers no more than its own unilaterally initiated communications.

In any event, the court is not convinced that the language cited by Defendant supports its

---

[2] When the Georgia Supreme Court issued the *Carnett's* opinion, the established business relationship exception was not yet codified in the Code of Federal Regulations. The language quoted above from the FCC report is nevertheless substantially similar to the language eventually codified in the Code of Federal Regulations.

position. The FCC report relied upon in *Carnett's* states that a party has an established business relationship when it makes an inquiry, application, purchase, or transaction with that party. *Id.* at 128, 610 S.E.2d at 531-32 (quoting Common Carrier Scorecard at 22). This suggests, as does the report's invocation of the second person, that "relationship" is not always reciprocal; thus Banner may claim to have had an established business relationship with Centerline, but it does not follow that Centerline must have had one with Banner. Accordingly, had Centerline sent Banner a fax on October 18, 2006, Banner would have no claim, because Banner had made previous inquiries regarding Centerline's hiring needs. It does not follow that Banner's prior solicitations bar Centerline's claim here. The other case cited by Defendant, *Damas v. Ergotron, Inc.*, No. 03 CH 10667, 2005 WL 1614485, at *4 (Ill. Cir. July 6, 2005), is an unpublished opinion by a state trial court that Defendant claims demonstrates the acceptance of *Carnett's* in an Illinois court. The court is not certain that *Damas* does embrace *Carnett's*, but need not decide the issue. As explained above, *Carnett's* itself does not require a result favorable to Banner; moreover, the TCPA is a federal statute and "federal courts are under no obligation to defer to state court interpretations of federal law." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (emphasis omitted).

Plaintiff is entitled to summary judgment on Count I.

**II.    ICFA**

Both parties have moved for summary judgment on Plaintiffs' ICFA claim. The ICFA prohibits not only deceptive trade practices, but also unfair practices. 815 ILCS 505/2. Plaintiff does not claim that Defendant committed any fraud, but rather contends that Defendant violated the unfair practices provision.

When determining what constitutes an unfair practice, the statute directs courts to give "consideration . . . to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act ['FTCA']." *Id.* The Illinois Supreme

Court has thus adopted, for purposes of the ICFA, the factors set forth by the United States Supreme Court for construing the FTCA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 961 (2002) (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). Not all of these factors need to be met, and a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, at 418, 775 N.E.2d at 961 (quoting *Cheshire Mortgage Serv., Inc. v. Montes*, 223 Conn. 80, 106, 612 A.2d 1130, 1143 (1992)). This court previously held that Plaintiff's complaint adequately pleaded that each of these factors was present here. *Centerline Equip. Corp.*, 545 F. Supp. 2d at 780-81. Several other courts in this district have since concurred with the reasoning of that opinion when deciding motions to dismiss claims that an unsolicited fax violated both the TCPA and the ICFA. *See G.M. Sign, Inc. v. MFG.com, Inc.*, No. 08 C 7106, 2009 WL 1137751 (N.D. Ill. Apr. 24, 2009); *R. Rudnick & Co. v. G.F. Prot., Inc.*, No. 08 C 1856, 2009 WL 112380 (N.D. Ill. Jan. 15, 2009); *Pollack v. Cunningham Fin. Group, LLC*, No. 08 C 1405, 2008 WL 4874195 (N.D. Ill. June 2, 2008); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008).

Defendant argues that this court's prior opinion has little bearing on Banner's motion for summary judgment because that opinion—along with most of the other opinions cited above—presumed Plaintiff's complaint was on behalf of a class. Since that time, Plaintiff has dropped the class allegations and is now proceeding individually. While this does not alter the court's prior analysis that the sending of an unsolicited fax violates public policy, *see Centerline Equip.*, 545 F. Supp. 2d at 780, it does potentially affect the analysis of the latter two factors, namely, whether Defendant's actions were oppressive and whether they caused substantial injury. At first glance, Defendant's argument that the lack of class allegations renders these two factors insignificant carries substantial weight: in ordinary language, one would hardly call the effort

required to read and throw away a one-page unwanted fax "oppressive" or consider the injury caused by that effort "substantial." In the court's view, however, this argument misunderstands the nature of the ICFA. The statute is intended to protect consumers generally, not just the individual plaintiff bringing the suit. *See, e.g.*, *Dunn v. Pace Suburban Bus Serv.*, No. 00 C 6515, 2001 WL 1558277, at *2 (N.D. Ill. Dec. 5, 2001) (dismissing an ICFA claim "because [plaintiff] has not alleged any impact on consumers"). As this court explained in its prior opinion, the question is whether Banner's conduct "caused a significant amount of harm to consumers, taken in the aggregate." *Centerline Equip.*, 545 F. Supp. 2d at 781. This holds true regardless of the fact that Centerline proceeds as an individual plaintiff rather than as the representative of a class, because the ICFA itself is intended to more broadly protect the class of consumers, even when pursued by individual lawsuits. *See* 815 ILCS 505/11a ("This act shall be liberally construed to effect the *purposes* thereof." (emphasis added)).

Even with this broader understanding of the oppressive and substantial injury factors, however, the court concludes that Plaintiff still has not shown that Banner engaged in a practice that violates the ICFA. Plaintiff survived the motion to dismiss because it alleged a large aggregate harm to consumers caused by Banner's allegedly indiscriminate faxing. *See Centerline Equip.*, 545 F. Supp. 2d at 780 ("Even very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole."), citing *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 581, 475 N.E.2d 1024, 1029 (2d Dist. 1985). While the mere allegation was sufficient to survive a motion to dismiss, evidentiary support for the allegation is required at the summary judgment stage. All that Plaintiff has provided here is proof of its own damages (less than a dollar in paper and toner) and the possibility, neither confirmed nor disproved by Curry, that Defendant may have sent the fax unsolicited to some other individuals and businesses. This is not enough to create a *genuine issue* of material fact, which "exists where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party.'" *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 608-09 (7th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Without a showing that any other party received the fax and that such others were neither solicited nor sent pursuant to an established business relationship, no reasonable jury could find that these two factors were met and return a verdict finding in favor of Centerline on the issue of unfairness.

In the face of insufficient evidence, Plaintiff argues for the adoption of broad legal rules. Regarding oppressiveness, Plaintiff contends that "[p]ractices that inflict unavoidable injury are oppressive and unfair," and therefore Defendant's sending an unsolicited fax and using Plaintiff's toner and paper is necessarily oppressive and unfair. (Pl.'s Mem. in Supp. at 12.) In support of this broad statement, Plaintiff cites *People ex rel Fahner v. Hedrich*, in which the court considered a policy of the owner of a mobile home park to charge an "unconscionably large fee" when tenants decided to sell their mobile homes but leave the homes standing on the lots.[3] 108 Ill. App. 3d 83, 90, 438 N.E.2d 924, 929 (2d Dist. 1982). This policy was deemed oppressive because the defendant was providing virtually no service for the high fee he was charging and the tenants frequently had no choice other than to pay. *Id.* This holding is far narrower than Plaintiff's statement that an action that inflicts unavoidable injury is, by definition, oppressive. In any event, the facts of the present case are also very different: Banner was merely advertising its services, not taking advantage of desperate sellers. As for the substantial injury factor, Plaintiff returns to the argument discussed above that substantial injury is considered from the standpoint of consumers generally and not necessarily the individual plaintiff. *See Robinson*, 201 Ill. 2d at 418, 775 N.E.2d

---

[3] Plaintiff also cited *Elder v. Coronet Ins. Co.*, 201 Ill App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990), but this case offers little support for Plaintiff's assertion. In *Elder*, the court held that an insurance company's practice of requiring its insureds to take a polygraph exam and refusing to pay their claims when they failed the tests was oppressive because the denials were not based on evidence admissible in court. *Id.* at 746, 558 N.E.2d at 1318. The court is at a loss to understand how this case supports Plaintiff's assertion that practices that inflict unavoidable injury are always oppressive.

at 961. But this does not change the fact that there must be *some* substantial injury suffered; the only injury Plaintiff has been able to establish is the very minimal financial loss suffered by Plaintiff alone. In short, neither regular usage of English nor the case law supports a description of the one-time receipt of a one-page fax as "oppressive" and $1 in costs as "substantial."

Plaintiff could still prevail on the ICFA claim if the combination of these three factors would support a finding that Banner's sending of the unsolicited fax was unfair. *Id.* As the court previously noted, Banner's transmission of an unsolicited fax is contrary to public policy. *See Centerline Equip.*, 545 F. Supp. 2d at 780. This is not enough to justify a finding of liability under the ICFA, however, as "the patent inapplicability of the other two factors . . . heavily outweighs that one element." *Rossario's Fine Jewelry, Inc. v. Paddock Publications., Inc.*, 443 F. Supp. 2d 976, 979 (N.D. Ill. 2006) (addressing a similar unsolicited fax claim under the ICFA). The court concludes that Defendant is entitled to summary judgment on Plaintiff's ICFA claim.[4]

## **CONCLUSION**

Plaintiff's Motion for Summary Judgment [93] is granted with respect to Count I and denied with respect to Count II. Defendant's Motion for Partial Summary Judgment [97] is granted.

ENTER:

Dated: June 9, 2009

_____
REBECCA R. PALLMEYER
United States District Judge

---

[4] The court does not address Defendant's additional arguments that the ICFA claim is barred by the doctrines of election of remedies and double recovery.